Our next case today, number 231940, Jose A. Ramos Ramos, et al. v. Luis A. Ferrao Delgado, et al. Will counsel for appellants please come up and introduce yourself on the record to begin. Good morning, your honors. May it please the court. My name is Matthew B. Gilliam and I represent the appellants in this case. Your honors, may I reserve five minutes for rebuttal? No, but you can have three. Okay. Thank you. The Supreme Court's 2018 holding in Janus is simple. Unions and government employers cannot deduct dues from employees without their consent. This case concerns a plain violation of Janus's simple holding. Weeks after the Janus decision, Appellants Ramos and Mendez, the two original plaintiffs, resigned from the union and objected to WPR and the union taking any further dues from them without their consent. The union continued taking money for nearly three years after Janus. The union and WPR ignored the employees' repeated requests to stop deductions and even the lawsuit didn't stop them. They continued violating Janus for another full year after the lawsuit. During this time, WPR and the union made 170 total unconstitutional deductions from Ramos and his co-workers. Okay, so what do you want? Just focus in on your claims. Tell me, is it declaratory judgment you're asking for, correct? Yes, your honor, we are asking for declaratory judgment. Okay, that's one thing. I just want to get a list. You're asking for declaratory judgment, are you still asking for some kind of injunction or is that no longer? No, we do not appeal the injunctive relief. Okay, and you want something about pre-Janus fees that were paid? No pre-Janus fees. Okay. Okay, post-Janus, you've been awarded or it's agreed to that the 700 plus the other monies will be paid, so that's been ordered by the judge. What else do you want? That's in the judgment that it must be paid, correct? Yes. That's correct. Okay, so what else do you want? So the union said that they were willing to offer those amounts deducted, but the court below did not find a constitutional injury. I understand that, but the judgment says they must pay, right? It does say they must pay, but it also excludes interest, and it excludes... Did you ask for interest? Yes, your honor. We did. We asked for all of the relief requested in the complaint below, including interest and nominal damages. And throughout our brief, our opening brief, we showcased that the court's decision excluded interest. Okay, so you want interest. What would entitle you to interest? Well, the violation, so it's still part of the actual injury that the plaintiff sustained. Okay, but you tell me you want a, quote, constitutional ruling, so that has nothing to do with interest. You just say you can get the interest without there being a, quote, constitutional ruling, right? Yes. I think that, so yes, nominal damages are awarded by default for the constitutional injury. Well, you're entitled to the withholding of the 700. I'm just going to use 700. I know it's more than that, but the $700, and you're saying that was withheld for three years, and so whether that was a... She says, she, judge says that was an administrative problem, but I agree with you, the money wasn't in your hands. It was in the union's hands, so maybe there's interest. That doesn't seem to have anything to do, in my mind, with this request you make for a, quote, constitutional ruling. Why do you care about that? Well, because interest is part of the, the actual damages that... Suppose, suppose the judgment said $700 plus interest. Would you have any reason to get the declaratory judgment? Uh... At this stage? The declaratory judgment? Yeah. Well, uh, yes, I think so. I think the declaratory, as we argued in our brief, the declaratory relief isn't moot because the defendants retain the capacity... Assuming that we don't agree with you on voluntary cessation, then it would be moot if you got the interest. No, Your Honor, I think nominal damages would still be allowable for the constitutional injunction. I thought nominal damages alone couldn't save something from being moot. Uh, yeah, it can, Your Honor. I think under several cases, the Uzug Bunim case that the Supreme Court decided, um, I maybe even carry the, uh, FIFAS and, uh, Stakura. They may all address that. So the judge below says not a constitutional violation because this was the necessary amount of time to make a administrative adjustment and how they manage deductions. And so, um, you take issue with that and say it was too long for it to be that. I imagine they are going to say it was that. Even if that were somehow still live, like we couldn't resolve that now, right? I mean, if, if the, do you agree that there's two separate ways this could be resolved in your favor? One is the way the district court said, which is there was a delay in figuring out how to make the payment system work so that this deduction wouldn't happen. That wasn't motivated by a desire to violate Janus. It was just sort of the natural function of a regime change in the world, says district court. You're entitled to your withheld money. I perceive why you might be entitled to interest. She says that resolves the case, but there was no violation of the first amendment. You say no, there's no way three years or whatever it is of, uh, it can be possibly a delay in the administrative mechanisms. It has to be an intentional violation of my client's constitutional rights, right? Have I said everything right so far? Yes, your honor. I believe so. Okay. We can't possibly resolve which of those is right here because all we know is it took some amount of time. Well, your honor, I think it's a plain violation of Janus on its face. Uh, even if it wasn't intentional, it was just clerical. Um, yeah, I think that there is plenty of evidence that it is intentional. But suppose it, that's what I think the question, we haven't had anybody pass on that question. There's no findings by the district court. There's no analysis of that issue. It seems like a dispute. Well, uh, so first of all, I, I think that the mere deduction of the money in and of itself is the plain, uh, violation of Janus. The contention is that that's a consequence of the administrative holdover point. Is that, you're saying that's a different point now than from the nonpayment? Well, yeah, I don't think that this falls in the very narrow range of cases of administrative holdovers. I know you think that, but we're just saying no one's passed on that question. Um. Isn't that true? No district court has passed on that. No, I think it has. In this case? Uh, oh, in this case, no. Right. Not in this case. On this record and. No, no, the court said that it's, uh, there's no constitutional injury. Right. And so if we thought that that could only be determined with a further factual development, then the appropriate thing to do would be to vacate and remand, right? Uh, if the court found that, yes, but I think there's plenty of evidence that, uh, this is a constitutional violation. I don't know what. Well, the mere fact of not paying reasonably could be viewed as not an intent to violate the Constitution, but anything from mismanagement to just not working out the administrative kinks. Well, Your Honor, they had three years, and this is 170 unconstitutional deductions that took place. I mean, I. That's your argument. I follow you. That's your argument. Right. You say it's worse than SPINA or LASPINA, so therefore, don't follow that. Take our view that it's a constitutional violation. I appreciate that. Is this different than LASPINA in any way other than the time? Uh, well, yes, Your Honor. I mean, I think that the time is a big factor in LASPINA. I'm saying, is this any different than the time in LASPINA? In other words, weren't there unconstitutional deductions occurring post-Janus in LASPINA also? Yes, they were. They were all resolved. And they said the mere fact of a post-Janus deduction is not itself a constitutional violation. And I would submit that, yes, it is. No, you would. I'm just saying, LASPINA doesn't support that proposition. Well, I don't think it goes any further. I think it was saying within the first two to four months.  So it's saying it's not in and of itself a constitutional violation. You'd have to know more. Well, Your Honor, the Supreme Court— LASPINA is saying that. LASPINA is saying that. Right. But the Supreme Court said in Elrond— But couldn't we have a trial—I don't know how interesting this trial would be—but we could have a trial where they would put on information about why it took them three years to make this adjustment. And you would cross-examine them and say, oh, no, you were sinister. It was really to deprive us of our Janus rights. And at the end of that process, somebody would say it was either mismanagement or administrative kinks or it was something sinister. And if it was an intentional attempt to deprive you of your Janus rights, then you might have a First Amendment violation. Isn't that how the world works? You can't just tell me what it is without someone passing upon it. No, Your Honor. I think that it is different. I don't think that there's this elevated burden of showing intent here because the Supreme Court in Janus held that the First Amendment prohibits any public sector employers and unions from deducting any union dues and fees from nonmembership. But my argument is that it's not the two months. Lespina is just wrong. Like Lespina should have come out the other way. Well, Your Honor, I would argue that because the Supreme Court has said the loss of First Amendment freedoms for even a minimal period of time unquestionably constitutes irreparable constitutional injury. But before Janus, they were clearly saying that they had a right to deduct it as a union fee. Post-Janus, they're not saying that anymore. They're just saying we just hadn't had the right opportunity or the right mechanisms in place to return the money. That may have no merit in the long run, but that is at least their argument. Well, in Lespina, I don't know if you're referring to Lespina, Your Honor, but there the union president the very same day of Janus sent out an email or a letter saying stop deductions immediately and they all ended within two to four months. Here, 170 total deductions over a three-year period and then one year after the suit was filed, at least five rounds of repeated rejections from the employees, which includes their complaints and amended complaints. But that's a far cry and so I don't think that there's any requirement for any heightened evidentiary burden of intent beyond that. Janus just says without proof of the- Are you saying that no reasonable jury could come to any other conclusion but that it's an ongoing constitutional violation? Yes, Your Honor. I am. I don't think that there's, they couldn't say, well, we would just get around to it and I don't think that there's any negligence argument that works here. It's a First Amendment violation. Was any of this relative to what was going on with Maria, Hurricane Maria or COVID or anything? No, there's nothing in the record that suggests that. You know the time frame. Sorry? You know the time frame for this. Correct. So, I mean, these occurred from 2018, immediately after Janus when Mr. Ramos and Mr. Mendez both resigned from the union and said no further deductions and then it lasted all the way through, well, for three of the employees, May of 2021, and then for Ms. Perez- I mean, that was around Maria. Sorry? That was around the hurricane. Well, yeah, but they had three years. In 2018, they could have immediately stopped deductions. Even if you gave them a year, that leaves two more years. And Janus doesn't put- I could be misremembering, but I thought there was some potentially complicating factor about health insurance and signing up for health insurance as to whether the people really meant to be withdrawing fully and how they were going to disentangle union workers who were getting health insurance from non-union workers who still could get health insurance, et cetera. And then the pandemic came and then they didn't want to cut people off from it. I mean, all of these types of things, I think, just go to the question of maybe in the end you're right, but are there unusual circumstances here that explain what happened that would be relevant to whether it was a constitutional violation? No, Your Honor, and I would submit- No, I know you say no. I guess I'm just throwing that out there. Yeah, and I would submit that Janus doesn't allow that. It prohibits that. Again, under Elrod, what Elrod says is the loss of- If there was a hurricane the day after, and as a result the automatic deduction occurred, that would be a constitutional violation the day after Janus, no matter why it happened. Under LaSpina's reasoning, in your hypothetical, I think that that would not be a violation. However, under LaSpina's reasoning, which we disagree with, but at the same time- You do disagree with it? Yes. I thought you were only disagreeing with it based- maybe I misunderstood you. I thought you were only disagreeing with it because of the time difference here. I didn't see a difference. I didn't see a difference. Well, we think that this case is a far cry from either of them. So I pushed you into that to say I disagree with LaSpina, but I'm pretty sure if I go back to your brief, I'm not going to find you saying LaSpina's wrongly decided. You're saying this case is far enough removed from LaSpina that it shouldn't control. Now I pushed you to say, well really that's a disputed fact, and that caused you to say here today, well, we think LaSpina's wrong, but that's not what your brief says. Well, we don't- yeah, that's correct. We don't- we just say that this is a far cry from LaSpina. So if you want to make those arguments about why LaSpina's wrong, you can develop them in the first instance I'll remand if we remanded it. Well, I think that we did make those arguments below, and also, again, I come back to the First Amendment principle that the loss of First Amendment freedoms for even minimal amounts of time constitutes injury and constitutional injury in a First Amendment violation. So I don't- it might be one situation. You described the hurricane hypothetical, but that doesn't apply here because we're talking, again, three years, 170 deductions. Well, but the relevant thing is whether the deduction- I just don't know enough about the record of the facts, but you could imagine a circumstance in which I resign from the union, but I sign up for my benefits, and those are benefits that were provided based on an understanding that you are a union worker, and if there's confusion on that point, then the determination of whether I should be deducting or not deducting with respect to this person is a different circumstance than just I willy-nilly just keep deducting even though it's clear the person's resigned, and here the record is some of these people were filling out forms that they still wanted the health care benefits, which I think formally were tied to being union members. Is that right or not? That was right below, but that issue was resolved. It's not really- What do you mean resolved? Meaning, I think sometime before summary judgment, the contention that there was discrimination based on union membership as to access to health care. I think the point is that's a complicating fact in how the union treated and the university treated these people, and to understand if Lispina creates some kind of rule out there, then not every time the deduction doesn't happen like that, that it may or may not be a constitutional violation. This is the brew of facts that should be presented in a courtroom somewhere that someone listens to and says logic of Lispina controls, therefore it's not a constitutional violation, or no, this was just whatever, something else that triggers the constitutional violation. That's I think the question. Why not? Why not have an airing of all those facts? Well, I think that they were aired, and I don't think that there's any other facts that would provide a justification for the union taking the money. But they weren't aired in the context of why the payments were not made when viewing whether there was a constitutional violation. They weren't aired in that environment. They were trying to be resolved so that people could figure out if they had insurance. Well, no, Your Honor, I don't think that that was a prominent factor in this analysis. Like she took, she, District Judge, took the facts, undisputed facts, as she saw them and said, you lose, you lose. And now you're saying, don't just send us back so we can air those facts. The facts are so powerful in my side, then not only did I not lose at summary judgment, I won on summary judgment. That's a big reach. Do you see that? Well, respectfully, Your Honor, no, I don't. Because I think that the only facts that matter here is that, one, they became non-members, which everybody recognizes, including the District Court. And then two, unauthorized deductions continued for three years thereafter. Those are the only facts that are material to the resolution of this claim. Well, but that, Lespina would say, no, that's not true. That there's a window of adjustment, and facts could bear on how long that window should be. But that window closed two to four months after Janus. If I couldn't find any cases in which a government employer and union withheld and collected agency fees so long after Janus, the- Let me just ask you about this interest point. It's not addressed, I think there's a footnote in your brief that just sort of glancingly references interest, and then- Page three of the opening brief, and then page 26, note seven of the opening brief, and then page 29 of the opening brief, we discuss how interest is excluded. There's the footnote I read. What do you say on page 29? 29, that is the footnote that we basically pointed out that the judgment excluded interest. Correct, and did the district, in the arguments to the district court, was an argument made to the district court specifically for interest? I know there was the general, we want the monetary relief, but was there a specific argument about interest made? Yes, district court docket 137-1, page 24. We requested interest, that was our request for relief, and we requested- And is there any, just what is the, I guess what I just, I'm not fully following how it worked. That $700 that she orders to be paid, the past deductions, in your understanding, given that she finds no constitutional violation, what is the basis for ordering that? Well, so it's the union's willingness to pay that money in its brief. The court does call them stipulated amounts, but to be clear, we never stipulated or signed anything agreeing that that affords us full relief. So the union was willing to pay the interest. That's right, but they never made a rule 68 offer of judgment. So is there any reason to think that if the fight is about the interest, that if the interests were paid, there'd be any reason for the fight to continue? Well, there's still the constitutional injury, which is redressable with nominal damages. And there's no possibility of a settlement if you got the interest? No, no, no, we've not engaged in those talks recently. Would you be willing to? Well, the union's welcome to make a rule 68 offer at any time. Well, we could just have you go back to camp in our mediation process to see if this part could be worked out. Well, again, I would say that this case has gone on for quite some time, and they've had a lot of opportunities to- It's not like we write our opinions the next day. Right, yeah, I understand. But I would say the constitutional claim is still before the court on appeal, and they still can easily obtain interest and nominal damages if the court reverses the court below. And they're finding that there was no constitutional injury. Thank you. Thank you. Thank you. Council Attorney for, excuse me, Sindicato de Trabajadores de la Universidad de Puerto Rico, please come up and introduce yourself on the record. You have a eight minute argument. Good morning. Good morning to our call. This is Attorney Jorge Marchand. We are representing Sindicato de Trabajadores de la Universidad de Puerto Rico. For purposes of this hearing, I will call the union. I want to address the last question you made about the interest. Our position for client, we don't have an issue with that. We're willing to pay the interest from the, depends, I think each plaintiff's, I think two of them is the same date, they withdraw from the- What happened to the judgment that ended up saying $700? It sounded like, were you offering the interest in the brief as well, 700 plus interest or not? Is that as part of our opposition to the motion of solemn judgment, we included the evidence of how much they paid, the date they requested that was on the record for each of them. And it amounted to the amounts that the district court said. And just it somehow just didn't include the interest? Honestly, I don't know why the judge didn't include interest. I don't want to speculate the reason. But to be honest with this honorable court, we don't have a problem. I understand that they're part of the interest. Because from day one, we have recognized the Janus issue. Evidently, but I want to emphasize, the plaintiff decided a strategy. Because they were the ones that filed the motion for summary judgment. They could have withheld that and go to trial. I think their position is, I don't have to present any evidence, because with the fact that it took three years, that only amounts to the constitutional injury they're requesting about. Because at the end of the day, they received a remedy. Basically, they won the case. The district court said, you're correct. There was- What do you say about the nominal damages point? I don't agree with it. They have not presented any evidence. And I want to use a quote- That's on the merits. Correct. Like- Putting aside the merits, do you agree that, let's say the interest gets paid. So what they say is, the case still isn't moot because of the nominal damages. I know. Evidently, I can't violate, my client can't violate his right. My client is a private entity. That's why they brought the president of the UPR. That's the first thing. Obviously, there's a contractor relationship between a union and its members. Based on applicable law, if a member doesn't want to be part of my organization, I have to obey their desires. And obviously, I can't apply from now on the union shop clause that usually was usual negotiating the collective bargaining. This is all a contractual agency fee. Is that the idea? Correct. That's why I'm saying, okay, evidently, I received money. I didn't, my client was not entitled to receive. I have to give you back, reimburse you for that money. And technically, yes, probably interest applies here. But that's it. In La Spina, it was not a contractual relationship? Was it a? The what? In La Spina, was it the same type of, what is the significance of the point you're making about the? Because in my position, I can respond, I'm not liable for constitutional. You're not a government, is your point? I'm not a government, I'm not liable for constitutional damages. I'm liable to reimburse them for the money I took. You're the downstream recipient of the money. The deduction is made by the University of Puerto Rico. By contract, they then have to send it to you. You're holding the money, so the order runs against you because you have the money. But the constitutional violation would be committed by the university. Is that your point? Correct. And you're paying, but you're happy to pay the interest? Yes, we don't have any issue with that. Because from day one, we have said it in our answer for the complaint, answer to the amended complaint. Because originally, there were two plaintiffs, then the amended came. So from your perspective, once the interest is paid, it would have to be moot as to you. Yes. Got it, got it. It's moot. Because that's it. Ideally, what they want here, I think the only issue, I don't think it's proper to revoke and Because they decided to present their case as they did. And the only thing they're relying on is the three year period. And I want to quote from Janus that they use in their brief. Janus says, we therefore recognize that significant impingement on first amendment rights occurs when public employees are required to provide financial support for a union that takes many positions during collective bargaining that have power, political, and civic consequences. He didn't present any evidence of that. Nothing to put the district court in a position to say there was a constitutional injury here. They only say it took too long. But as to you, none of that matters, right? You can't- I can't violate them. You can't violate 1983 by just with keeping money that you got from the University of Puerto Rico. Correct. Where, if there were a constitutional violation, where that would happen is keeping deducting for like a three year period after these people sent letters saying we don't want to be deducted anymore. And they did that, not you. Exactly. And something I have to, obviously my brother counsel Hernandez will elaborate on that, but the University of Puerto Rico is not a party in this case. And they are a public corporation. The immunity doesn't apply here. They should have been included in the complaint. They're not part of it. They named the president in the president's official capacity. But they didn't include the University of Puerto Rico. Why does that matter? I don't know. Why does that matter? Well, I imagine that my brother counsel will discuss that from my perspective. It matters because they're the party that made the collective agreement with me. I didn't agree with the then president. Isn't the president essentially the university when he is sued in an official capacity? In this case, no. Because there's no immunity for the University of Puerto Rico. They're a public corporation. You can sue them in federal court. And they're the ones that are part of the agreement. Even in the University of Puerto Rico, the collective agreement, it's true that the president negotiates with us. But then it has to be approved by the Board of Trustees. So it's the university that is part of the contract. Well, the university is public for certain purposes. But you're saying that the logic of 1983 is when it's actually the state. Correct. If you sue the official in their official capacity, then you're suing the state effectively. But if they're not the state, then you can say it's his official capacity, but it's still just suing him as like the head of the CEO of any other company. I got it. Before, like PREPA. If you have a consultation against PREPA, I sue PREPA in the federal court. So there's no immunity. Yeah. There's no commonwealth immunity for the University of Puerto Rico because they're a public corporation. Correct. That's you do the whole arm of the state analysis. Yeah. And what we've already held that our court. Yes. Yeah. That'll be all. Thank you. Thank you, Counselor. Attorney for Ferrado Delgado, please come up and introduce yourself on the record. You have a seven minute argument. Good morning. My name is Edgar Hernandez. May I please the court? Yes, I am here this morning on behalf of the President of the University of Puerto Rico. Initially, this case was brought against former president for the University of Puerto Rico, Dr. Haddock. He was summoned at some point in time. And subsequently, he resigned. He's not, obviously today, the president of the University of Puerto Rico. He has been succeeded by four presidents. If I'm understanding it, your position is that because the University of Puerto Rico is not Puerto Rico itself, suing the president in his official capacity- Is not enough. Is not enough. Yet your position also is that a suit against the president of Puerto Rico is not- The president of the university. University of Puerto Rico, in his official capacity, is not a suit against that particular individual. It's a suit against the office, and so it automatically changes, right? Right. Well, I don't know that both of those things can be true. The thing is that the University of Puerto Rico is essentially a public corporation. Yeah, so what's our rule about, I understand- It's a legal entity. I understand the point that if you are suing a state official in their official capacity, it's the same as a suit against the state. And I understand, right? Against the state. Yes. And if you sued an arm of Puerto Rico, an official who heads an arm of Puerto Rico, or under our arm of the state analysis. And you sued that person in their official capacity, it'd be like suing Puerto Rico, correct? Not exactly, because in this case, the university- No, no, not this case. In a case in which the entity that was being sued constituted an arm of Puerto Rico for 11th Amendment purposes. Well, in that case, yes. Yeah, okay, great. So, and then you're saying, but this isn't that case. This is because this is not an arm of Puerto Rico under 11th Amendment analysis. So, you are not suing Puerto Rico when you sue the University of Puerto Rico- That's right. Head in its official capacity. That's right. Okay. But it's a public corporation nonetheless. It's a public corporation. What is the law on whether that means you're de facto suing the public corporation, even though you're not suing Puerto Rico itself? Because under the organic act of the University of Puerto Rico, the entity, the University of Puerto Rico, it's been empowered to sue and to be sued. That's what I'm saying, but when I sue the president of a public corporation, or the head of a public corporation, in its official capacity, in that official's official capacity, of a public corporation, not a private corporation, but not an arm of the state, do we treat that as a suit against the entity, or only a suit against the official? In other words, is it like suing the CEO of Exxon? Yes. Or is it like suing the president of Puerto Rico, the governor of Puerto Rico? It's a suit against the person in his official capacity. It's not a suit against the entity. Because in the end, in the... You don't have a concept of official capacity that's not the entity. But the thing is that, as the complaint was drafted, it was back in time when the CBA, the Collective Bargaining Agreement, was entered into by the University of Puerto Rico and by the union. So, the president of the University of Puerto Rico, particularly in this case, was not a party to that agreement. So, the thing that's been complained about by plaintiffs is that the CBA in itself constitutes a constitutional violation of the union members, insofar as it requires the university to deduct the union fees and refer those monies to the union. Isn't your motion to us to change the caption reflective of your understanding that really it is a suit against the entity and not the official? Well, really what we wanted to do is to inform properly the court who the president of the University of Puerto Rico is. Those filings have been presented to the court without waiving... And I assume in a standard issue case when you sue, I guess we just have to, I just don't know what the law... If it's not a suit against the entity, how can we switch plaintiffs? We'll have to go back to the district court, amend the pleadings, file an amended complaint, and start all over again. Not mechanically how we do, we know how to do it. I'm sorry, Your Honor. I'm saying how do we legally switch plaintiffs if it's not a suit against the entity? Because if he's not there in a representative capacity for the entity, then it's just a personal suit against the president, which I understand you don't want it to be. That's what, in essence, you're arguing it is. What I'm arguing is that we still have to have the University of Puerto Rico as a party here. Because in the end, it is the University of Puerto Rico who will be charged ultimately. That's because you're saying they only sued the president of the University of Puerto Rico, right? Only sued the president of the University of Puerto Rico, and today we don't have the same president. And then Judge Thompson's question is, since you sued the president, how can we, the president that was sued was the president that was in office then. But then the president changed and their successors...  And the successors were never served with a copy of the complaint. The only one who was being served... He wasn't sued. He didn't need to be served. The reason you changed the names of the presidents, you filed a motion in this court, please change the names of the presidents. The reason you did that is you thought that somehow connected to the University of Puerto Rico. Because you wouldn't have done that. Because the only reason that change matters is they now stand in this job. And so you're suing the job, so you change the person in the job. But you're saying this whole thing isn't about the job, it's about the university. You could have sued the university, you can't sue the job. That's a different argument. If that's right, you wouldn't come here and say, change the name because the occupant of the job is different. So your argument today is this is just a pleading error by them. They named the wrong... They should have named the university, they named the job. That doesn't get them anything. And so to the extent they want a constitutional violation, which is what we talked about for the first half hour, that party that could be assigned blame for the constitutional violation isn't here. And that is precisely so. The University of Puerto Rico is not here. And if the University of Puerto Rico was here, let me explain just for 15 minutes. No. Then the filing of the complaint violated PROMESA. Counselor. Then you should have... Because you win if we're right. But you lose on your motion to change the caption. Right. I'm sorry, what is the question? If we don't change the caption, you win. If they haven't sued the right party, your position should be don't change the caption, just let them continue against the wrong party. That's it. All I really wanted to do with my filing was to let the court know who the new president of the University of Puerto Rico is. We misunderstood it since you said change the caption. I'm sorry. Okay. If I misled you, I'm so sorry. But the thing is that since Dr. Haddock, at least four more presidents have been elected or succeeded. Before you sit down, because I don't want to mislead you. Yes. I would say the briefing doesn't address the complexity, potentially, of the question of the status of an official capacity suit against the head of a public corporation that is not an arm of the state. I don't quite know what you're supposed to do with that. If it turned out that that, in effect, is a suit against the entity, then there would be a potential... The merits of the issue would still be present. Do you have anything to say about why, even if all the damages were paid, the 700 was paid plus the interest, they say they still have an interest in getting the declaratory judgment because of the nominal damages insofar as there's a violation? Well, first of all, I have difficulty to swallow the idea that this is, at this time of the events, a constitutional violation. I think it's a breach of contract matter because the collective bargaining agreement between the University of Puerto Rico, and this is me speaking by myself, not as a representative for the university. I'm not here representing the university. It's still a valid contractual obligation. The district court did not change a single sentence, letter of word to the collective bargaining agreement. Who makes the deduction? The deductions are made by the University of Puerto Rico, as far as I can tell. Okay, thank you. And the monies are then transferred over to the union, and the union keeps the monies. So if the union is willing to pay back whatever amounts are owed to the plaintiffs, including interest, then the university shouldn't... Just listen. When the university makes the deduction, do you do it based on the list that you get from the union? Yes, we do. And so presumably the union had not sent over a list to the university showing the resignations during the time you were doing the deductions? That I don't know for a fact in this case, Your Honor, to be completely honest with the court. Thank you. Okay, thank you. Yes, my pleasure. Have a nice day, sir. Thank you, counsel. We'll turn for appellants. Please come up and reintroduce yourself. You have a three-minute rebuttal. Thank you, Your Honors. Matthew B. Gilliam for the appellants on rebuttal. Before you start, do you know anything about the law of a public corporation that is not an arm of the state and what the significance of suing the head of that non-arm of the state public corporation is when they're sued in the official capacity? It's okay to say no. I was going to say no, Your Honor, and agree with what you said that it has not been briefed and the complexity of that. As far as we know, it's controlled by Monell and Goldstein. But those are all cases in which – oh, I see. Yeah, and we did cite those in our briefs in response to their arguments. And they're just like suing the mayor of the city. Right, right. So I think those cases are controlling on the issue. It's suing UPR. There's no difference. And the theory is that whether it's a public corporation or not, it's the government. That's right. Well, yes, yes. And to be clear, we're only seeking declaratory relief against UPR. Nothing more. So also just to respond – And so that means with respect to the payment of the interest, if they're willing to – The only thing you have left then is the nominal damages? Yes. But I would think that interest, if it's to be awarded, has to be awarded as a remedy on our constitutional – Not if they're willing to give it to you. Well, if they made a Rule 68 offer, sure. I mean, maybe that would be a vehicle for – Or if the judgment was amended to include it. I would just think – Just like the 700. Your Honor, I don't know, but maybe I would think that Article 3 would prohibit any type of just opinion giving them or requiring them to simply pay without saying that we're entitled to this money for the actual violation of their constitutional rights. That's what the judgment below now says. Maybe I misunderstood you, but the judgment – As to the 700, it says you're entitled to 700 without saying there was a violation. That's right. That's right. Now, nobody appealed that. That's not – Then you would be an odd person to appeal it. Right, right. We wouldn't want to appeal that. So it would be odd if you appealed it if it also said, and you get interest. Well, I'm just saying that I don't know that the Court could do that without finding a constitutional injury. I would think that that finding would have to come, that relief would have to come. Unless you objected to the Court doing it, parties can stipulate to judgment and interest. Well, sure, sure. If there is a consent judgment or a Rule 68 offer of judgment, and by that mechanism, absolutely. I think that it could be done that way. Otherwise – I guess I'm losing the thread here. The union didn't violate your constitutional rights. UPR did, right? No, the union did violate our constitutional rights. They're not a state or a government. They're a union. So the mistake committed by the government was the deductions and then sending the money to the union, right? That's the thing the government did because the First Amendment applies to state action, at least where I learned it. Well, the union is considered state actors under Lugar v. Edmondson and many other cases. Even when the state is actually – I mean, the state is the one who does the deducting, which is the thing Janice says you can't do. Yes. Then they ship the money downstream where it sits in an account of a union. But they're doing it at the request of the union. Unions are state actors if they're exercising rights or privileges created by the state, and that's what's happening here. We have state laws that authorize the agency – And they control the violation because the violation still isn't – By collecting the money, they commit the violation. And we're happy to address this in supplemental briefing. It wasn't anything that anyone appealed. But there are multiple cases like the Supreme Court's decision in Tulsa when private parties make use of state procedures with the overt significance – Do we have anything in the union case? Yes, Your Honor. We have Janice on remand to the Seventh Circuit. They recognized that the – I guess you'd call it Janice 2, but it was – So both entities violate the Constitution? That's correct. And then also Hudson, an old Seventh Circuit case – Did we address this in Doughty? I thought in – No, this was a little bit different, Your Honor, in Doughty. Yeah, here you have procedures that are both in the CBA that shows they're intertwined in collecting and receiving the money, and you have the agency fee arrangement mechanisms. So after this winding, long discussion, your position is still, at the end of the day, the constitutional violation is committed because it was an error by the district court to rely on Lispina, and not only is there a disputed fact about why this money didn't end up with my client sooner, it is so clear that it should have earlier, that we must win. Yes, there's no disputed material fact that's relevant to the Janice violations. There's no bad faith or intent requirement, no heightened bad faith or intent requirement. And your evidence is only the time? No, it's only the deductions. It's the deductions – I mean, I listened to a conversation between you and Chief Judge Barron where he said things about hurricanes, and you said, well, maybe once we start into that, then that doesn't work anymore. And you're right. I mean, it's a hypothetical, but that hypothetical doesn't apply here because they did this for three years, and any one of those deductions outside of the two- to three-month period – Thank you, Your Honors. Thank you, Counsel. That concludes arguments in this case.